HANSON (ODENHEIMER v.). See Case No. 10,429.

---

## Case No. 6,043.

### HANSON v. ROWELL et al.

[1 Spr. 117.][1]

District Court, D. Massachusetts. Nov., 1845.

WAGES OF SEAMEN — FORFEITURE BY DESERTION.

1. Where there was a collision, in the night time, and a cry that the vessel was sinking, and a seaman jumped from his own vessel to the other vessel for safety, and afterwards endeavored to rejoin his own, without success: *Held*, that he had not incurred a forfeiture of wages.

2. Wages were allowed up to the time of leaving his own vessel.

[Cited in Antone v. Hicks, Case No. 493.]

This was a libel for wages promoted by Hanson, a seaman on board of the ship Sumatra, against the owner [and others].

E. & G. A. Smith, for libellant.
E. Blake, for respondents.

SPRAGUE, District Judge. It is insisted that the libellant has forfeited all wages, by abandoning the ship. It is likened to the case of the mariners leaving a wreck, which becoming derelict, is afterwards saved by other hands. Lewis v. The Elizabeth & Jane [Case No. 8,321].

There is some force in the analogy, but it is not close enough to control the present case. The act of the libellant, in leaving the Sumatra, was not one of deliberation, but a sudden impulse, from the instinct of self preservation. In the night time, at sea, the Sumatra came in sudden collision with a much larger ship; the wind being strong, and the waves high. There was a cry that the ship was sinking, and the libellant and two others jumped aboard the colliding vessel, a Dutch ship, which immediately separated from the Sumatra. These seamen did all in their power to return to their ship. At their request, the captain of the Dutch vessel lay by all night, and went out of his course the next day, in order to put them on board the Sumatra, but she, although to windward, and seeing the Dutch vessel with her colors indicating a desire to speak, did not run down to her, or make any attempt to hold communication with her. It was impracticable for the Dutch vessel to approach the Sumatra. And after lying by another night, and finding it impossible in the morning, to distinguish the Sumatra from other vessels then in sight, she continued her voyage. The libellant having only jumped from his ship to save his life, in a moment of sudden alarm, for which there was sufficient cause, and having used every effort to return, it is not a case of forfeiture of wages.

---

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

The next question is, up to what time wages shall be allowed?

Upon this question I have had some doubts. If it were satisfactorily proved, that the Sumatra might have run down to the Dutch ship, and taken these men on board, but voluntarily declined, I should not hesitate to give to the libellant all that he asks, viz., wages until his return to the United States. But it is in proof, that the sea was so rough that a small boat would not live, that the Sumatra had lost several dead-eyes, and lanyards, and that one of the masts, at least, was left without the support of shrouds on one side; that she was near the Cape of Good Hope, where tempestuous weather might be expected, and that all hands were required to repair the damages, so as immediately to give security to the masts. Under these circumstances, although it would seem from the conduct of the Dutch ship, that she thought that these men might be put on board the Sumatra, I think that the captain of the latter vessel must be allowed to exercise his own judgment, and that it cannot be safely said, that he voluntarily refused to take practicable measures to aid the seamen in returning to his ship. Where seamen have been discharged aboard, either wrongfully or from necessity, or from sale of the vessel for innavigability, wages have been allowed in some cases, until the end of the voyage, and in others until the return of the seaman, deducting what he may have earned, or allowing his expenses, as the case may be.

In case of capture of a neutral vessel, and a seaman's being taken from her, and the vessel afterwards released and completing her voyage, wages have been allowed for the voyage, if the seamen have been prevented from rejoining the vessel, without fault on their part.

In case of impressment, Judge Peters allowed wages only to the time of the impressment. The distinction between this, and that of taking seamen from a neutral vessel, in case of capture, is not satisfactory. Watson v. The Rose [Case No. 17,288].

In case of death, there has been some diversity of opinion and practice, elsewhere, on the question whether wages should be paid to the end of the voyage, or only to the time of the death. In this district, the settled practice is, to allow wages only to the time of the death.

I shall follow the decisions in cases of death and impressment, rather than those in case of a sale for innavigability, or a seaman being taken from a captured neutral vessel. In the last, the doctrine was not established without a struggle, and against names of high authority.

And where the discharge has been occasioned by innavigability, there was something of obligation on the part of the owners, to furnish a ship sufficient for the voyage, contracted for by the seamen; and policy requires that they should not have the inducement to violate it, which even a release from the payment of wages might in some cases present.

In the present case, although no blame is attached to the libellant for leaving the Sumatra, and he used every effort to return, yet he was separated from her by his own act, which public policy requires should not be encouraged; and if any distinction is to be made between this case, and that of a forcible impressment, it would be against the libellant. Curtis's Merchant Seamen, pp. 278, 279, 291, 293, 299–301, 304, 329, and cases there cited. Wages allowed up to the time of leaving the Sumatra.

Decree for the libellant, $75.17 and costs.