JOHNSON, P. J.
This is an appeal from a judgment of the municipal court in favor of defendants, entered after a general demurrer to the complaint had been sustained without leave to amend.
*794 The action was instituted by the administratrix of the estate of P. J. Murray, deceased, to recover the sum of approximately $1,040, for which it is contended the defendants became liable as wages by reason of the employment of the decedent in the maritime service of the defendants.
The complaint alleges that on August 13, 1930, a written agreement was made between Murray and the defendants whereby Murray was employed as first assistant engineer on board the steamship “Golden Tide”, owned and operated by the defendants, for a term of, but not exceeding, six calendar months at the rate of $175 per month with board and room. According to the contract Murray was to serve as first assistant engineer on a voyage from San Francisco to' Shanghai, and such other ports and places on the Pacific Ocean as the master might direct, and back to the United States to a final port of discharge on the Pacific coast. It is further alleged that on August 15, 1930, while at sea en route to Shanghai, Murray was killed in the performance of his duties on board the ship, and that compensation on the basis agreed was paid to the time of death. The administratrix seeks by the action to recover an amount representing the full balance of wages for the remainder of a term of six-months. There is neither any averment in the complaint, nor any contention otherwise, that Murray’s death was due to any fault on the part of the defendants.
The question involved is whether the representative of the estate of a seaman, who died at sea while in the service of his ship, is entitled to recover the amount which the deceased would have earned as wages for the entire voyage if he had lived, or is entitled only to the amount of any unpaid wages earned to the time of death. While such cases are governed by admiralty law, a study of the few decisions on the subject, all found in the early reports, shows lack of harmony in the rules applied in different jurisdictions, and there is no case in point bearing on shipping conditions of our time.
The earliest reported case in this country is Walton v. Neptune, 1 Pet. Adm. 142 [29 Fed. Cas. 142 (No. 17135)], decided in 1800 by Judge Peters of the United States District Court of Pennsylvania. In that day the rule, now obsolete, prevailed that the freight was the mother of wages; and if through disaster the freight was lost, the wages *795 were lost. Influenced by this consideration and by his interpretation of the laws of Oleron and other ancient regulations printed in the appendix of 1 Peters, Admiralty Decisions, Judge Peters ruled that wages for the full voyage were payable to the heirs of the deceased mariner. His view was that such a rule tended to make the master considerate of his men and gave encouragement to those entering a hazardous and laborious employment. The rule was adhered to by Judge Peters in 1802 in Scott v. Greenwich, 1 Pet. Adm. 155 [21 Fed. Cas. 830 (No. 12531)], and by Judge Washington in 1806 in Sims v. Jackson, reported in 1 Pet. Adm. 157, and in 1 Wash. C. C. 414 [22 Fed. Cas. 183 (No. 12890)]. In 1839 Judge Hopkinson of the Pennsylvania District applied the rule in Johnson v. Coriolanus, Crabbe, 239 [13 Fed. Cas. 737 (No. 7380)].
These cases established the rule of the Third Circuit, but in the United States District Courts of South Carolina and Massachusetts, and in a decision of the United States Circuit Court in Maryland, the representatives of a deceased seaman were held entitled only to wages earned to the time of death.
In Carey v. The Kitty, Bee, 255 [5 Fed. Cas. 59 (No. 2402)], which came before the United States District Court of South Carolina in 1808, Judge Bee, after commenting on the Pennsylvania cases, expressed an unwillingness to depart from the uniform practice' which had prevailed in his own district, and awarded wages only to the time of death, deeming the medieval marine ordinances, as interpreted by Judge Peters, inapplicable to the changed conditions of his day.
Then in 1809 Judge Davis of the United States District Court of Massachusetts had the question before him in Natterstrom v. The Hazard, Bee, 441 [17 Fed. Cas. 1243 (No. 10055)]. From his critical analysis of the ancient regulations and study of the old sea laws, he reached the conclusion that their true meaning and intent were that in case of the sickness of a seaman there should be no deduction from his wages, and in case of death, what he had earned up to his decease should go to his heirs. The fundamental difference between Judge Davis and Judge Peters lies in their interpretations of the language of the old regulations and of the commentators upon them.
*796 Speaking of the ancient ordinances, Curtis in his Treatise on the Rights and Duties of Merchant Seamen says (p. 63) : “Whether wages were given for the whole voyage, or only to the time of the death of the mariner, is a vexed question upon the interpretation of these texts.” (See, also, pp. 290 to 295, and 2 Labatt’s Master and Servant, 1491.) Likewise Maclaehlan on Merchant Shipping, seventh edition, referring to the laws of Oleron, which were followed by those of Wisby and the Hanse Towns, says (p. 174) : “It is not clear whether the payment thus directed is to be understood of a sum proportionate to the time of his service or of the whole sum that would have been earned if he had lived to the end of the voyage.” And in Cutter v. Powell, (1795) 6 Term Rep. 320, 324, and Beale v. Thompson, (1903) 3 Bos. & P. 405, 427, it seems to be conceded that in England wages would be payable merely to the time of death, in the absence of an express stipulation to the contrary.
The conclusion to which Judge Davis came was in accord, as he states, with the uniform usage in Massachusetts. Such usage on the part of the early colonists is significant, since they grew to be a seafaring folk with an active commerce; and their admiralty court at Boston, which was functioning at least as early as 1740, would have been most likely to follow the British admiralty court, if a different practice had been established there.
The ruling of Judge Davis settled the law in Massachusetts, as appears in Luscomb v. Prince, 12 Mass. 576, 579, decided in the state court in 1815, and in Hanson v. Rowell, 1 Spr. 117 [11 Fed. Cas. 472 (No. 6043)], where in 1845 Judge Sprague of the United States District Court said: “In case of death, there has been some diversity of opinion, elsewhere, on the question whether wages should be paid to the end of the voyage, or only to the time of the death. In this district, the settled practice is, to allow wages only to the time of the death.”
Likewise in 1812 Justice Duvall of the United States Supreme Court, sitting in the Circuit Court in Maryland, held in the case of Jones v. Smith, reported in 4 Hall, American Law Journal, 276 [13 Fed. Cas. 1033 (No. 7497)], that where certain mariners had died on a voyage from Baltimore to Batavia and thence to Japan, their representatives should receive wages only to the time of their decease.
*797 •It is thus quite clear that no universal admiralty’- rule is established by any of the reported cases on the subject in this country.
In 1872 Congress passed an act in behalf of merchant seamen (17 Stats., chap. 322, p. 262), which was substantially in the form of the British Merchant Shipping Act of 1854. This act of Congress was carried into the Revised Statutes as chapter LIII; and with subsequent amendments is now embodied in 46 United States Code Annotated, chapter 18. While the act, neither in its original nor its present form, makes any provision regarding wages in case of death during the voyage, yet it does contain express regulations concerning the right to wages under other contingencies, of such character as to indicate that payment of wages for the full voyage in ease of death was not in the contemplation of Congress.
That act abolished the rule that freight is the mother of wages (sec. 4525, U. S. Rev. Stats.; 46 U. S. C. A., sec. 592) ; and among other things provided that in case a seaman should be discharged without his fault before one month’s wages were earned, he should receive in addition to the wages earned, a sum equivalent to the wages for one month. Then in 1898, by amendments to section 4581 and 4583, Revised Statutes (46 U. S. C. A. 683 and 685), it was made the duty of the master, discharging a seaman in a foreign port, to provide him with employment on another agreed vessel, or to pay him one month’s extra wages, if the discharge was not found by the consul to be due to neglect of duty, incompetency or injury incurred on the vessel; and a like rule was made applicable on the discharge of a seaman by the consul, after being satisfied of the truth of a complaint that the voyage was continued contrary to agreement, or that the vessel was badly provisioned or unseaworthy, or that the officers were guilty of cruel treatment.
Since the compensation of a seaman wrongfully discharged, or entitled to be discharged because of just grievances, was thus limited, it is not reasonable to conclude that Congress contemplated that wages for the full voyage should be payable in case of death. And inferentially it may be said that in 1882 the United States District Court of Pennsylvania in United States v. Tobey, 12 Fed. 347, treated the rule of Judge Peters as superseded by the *798 enactments of Congress. By sections 4538 and 4539, Revised Statutes (46 U. S. C. A., sees. 621 and 622), it was provided that in case of the death of a seaman on a voyage, his effects should be sold at the mast, and that upon reaching a port in the United States, the master should pay to the shipping commissioner the proceeds of sale and the balance of wages due to the deceased, less any deductions to be made therefrom.
In the case cited, a seaman had died during a voyage from San Francisco to Queenstown, and a sale of his effects at the mast had produced $49.60. The deceased had received an advance of $75 before sailing,. and his earnings at the rate of $25 per month to the time of his death, one month and twenty-one days, amounted to $42.50. As he thus owed the ship $32.50, the master on arrival at Philadelphia deducted this amount from the proceeds of sale of the effects, and tendered to the shipping commissioner the balance of $17.10. No objection was raised to the limitation of wages to the time of death, but the commissioner denied the right of the master to deduct the amount due to the ship from the proceeds of sale, his contention being that deduction of any amount chargeable against the deceased could be made under the statute only from “wages due the deceased”. This contention was sustained both by the district judge and the judge of the Circuit Court of the Eastern District of Pennsylvania, who held that the entire proceeds of the sale must be paid to the commissioner. If either the commissioner or the judges, who in a matter involving only $32.50 were studiously bent on protecting the rights of seamen, had deemed Judge Peters’ rule to be still declaratory of the law as administered in their district, they would assuredly have insisted on payment of wages for the full voyage, less the advance of $75.
In the maritime world conditions have changed enormously since the beginning of the nineteenth century. Instead of sailing vessels making long voyages, with wages depending on freight money being earned, we now have ships traveling under their own power, with great saving of time and lessening of hazards. And under contracts with the owners or operators, the seamen are entitled to the agreed wages regardless of the freight money, and may enforce their claims equally with employees in other occupations.
*799 If it were shown to he the present practice in admiralty to award wages for the entire voyage in case of death in the ships service, it would be our duty to apply such rule; but we are not acquainted with any jurisdiction in which that view now prevails. It has been the practice in this district to allow the wages of a seaman dying on the voyage only to the time of death. We are of the opinion, therefore, that, in the absence of the promulgation of any authoritative admiralty rule, we may properly give consideration to the policy favored by this state as expressed in its Civil Code when adopted in 1872 and still retained. In section 2062 there is this provision: “If a mate or seaman dies during the voyage, his personal representatives are entitled to his wages to the time of his death, if he would have been entitled to them had he lived to the end of the voyage. ’ ’
This recommends itself as the reasonable and just rule under modern conditions, and not only one which better accords with the general principles governing the relations of master and servant, but also one that seems to have won the ascendency in admiralty practice.
Accordingly, we conclude that the demurrer to the complaint was properly sustained, and the judgment in favor of defendants is therefore affirmed.
Conlan, J., and Goodell, J., concurred.